THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| SHERRY NELSON,               ) | |
|                              ) | |
|       Plaintiff,             ) | |
|                              ) | |
|       v.                     ) CASE NO.: | |
|                              ) | |
| JASPER SEATING COMPANY INC., ) 3:10-cv- 64 RLY-WGH | |
|                              ) | |
|       Defendant.             ) | |
|                              ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Sherry Nelson (hereinafter "Nelson"), by counsel, files her complaint for damages and injunctive relief against Defendant Jasper Seating Company Inc. (hereinafter "Jasper"), and in support of her action states as follows:

### NATURE OF THE CASE

1. Nelson brings this Complaint under the Americans with Disabilities Act, 42 U.S.C. § 12101, the Family and Medical Leave Act of 1993 and state as well as common law to seek redress for injuries she suffered as a result of Jasper's unlawful termination on or about July 10, 2009 based on her perceived disability and in retaliation for requesting FMLA leave.

### JURSIDICTION AND VENUE

2. This Complaint is brought pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, a federal question.

3. Family and Medical Leave Act of 1993, a federal question.

4. Jurisdiction of this Court is based on 28 U.S.C. §§ 1331 and 1343(a).

1

5. Jurisdiction of the claims under Indiana Code § Indiana Code §22-9-5 and the common law causes of action is invoked pursuant concurrent subject matter jurisdiction and this Court's jurisdiction over the parties.

6. Venue herein is proper under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-(5)(f)(3) since the actions complained of herein arose in the State of Indiana.

7. Nelson filed her Charge of Discrimination with the Equal Employment Opportunity Commission in October of 2009. Exhibit A.

8. A Dismissal and Notice of Rights was issued by the EEOC on Friday, January 29, 2010. Exhibit B.

9. Nelson received the Notice on Monday, February 1, 2010.

10. This Complaint is filed within ninety (90) days of receipt of said Notice.

## PARTIES

11. Nelson is a Caucasian female citizen of the United States and a resident of the State of Indiana.

12. Nelson was employed by Jasper from January 15, 1998 until July 10, 2009, in the State of Indiana.

13. Jasper is an employer as defined under 42 USC §2000e-2(a)-(d), engaged in conducting business in the State of Indiana.

14. Nelson was an employee of Japer as defined under 42 USC §2000e-2(a)(1), (2).

## FACTS

15. Jasper is in the primary business of manufacturing wood furniture.

16. Jasper operates several plants in southern Indiana, with over four hundred (400) employees, and is headquartered in Jasper, Indiana.

17. Nelson was hired to work for Jasper at its French Lick facility on or about January 15, 1998.

18. Nelson was employed as an assembly line worker in the capacity of Drawer Fitter.

19. At all times of her employment Nelson performed to the satisfaction of Jasper.

20. Due to the nature of her work, which required her to repetitively assembly drawers on a forty (40) hour basis during the week, Nelson developed severe carpal tunnel syndrome and arthritis.

21. In or about May of 2008 Nelson notified Jasper of pain in her left wrist.

22. Jasper directed Nelson to Advanced Rehabilitation, Inc. ("ARI") for treatment.

23. Jasper was aware that Nelson developed severe carpal tunnel syndrome and that her job requirements, specifically the glue gun she was required to use to glue on drawer bottoms, was causing her severe pain and discomfort since ARI reported these findings to Jasper.

24. ARI instructed Nelson not to use the glue gun.

25. Jasper eventually provided Nelson with a glue pot.

26. Upon receipt of the glue pot Nelson reported that her symptoms where somewhat relieved but that she was still experiencing soreness and pain.

27. On June 4, 2009 Nelson called Jasper to inform it that she was going to see a doctor regarding her condition.

28. On June 11, 2009 Jasper provided Nelson with notice that she was eligible for FMLA but that she was still required to submit medical certification to the company by June 26, 2009. (Exhibit C).

29. Jasper did not actually provide Nelson with the requisite medical certification forms until approximately June 20, 2009.

30. Nelson's doctor, Lindsey D. Lira M.D., completed the FMLA certification forms and faxed them to the company on June 26, 2009. (Exhibit D).

31. Despite prescribed testing and treatment Nelson's condition did not improve within thirty (30) days.

32. On July 8, 2009 Jasper submitted an additional medical certification request form to Dr. Lira's office.

33. On Friday, July 10, 2009 Dr. Lira filled out and faxed a second FMLA certification form to the company. (Exhibit E).

34. The July 10, 2009 certification form indicated that in order for Nelson to return to work Jasper will have to modify the "height/angle, ergonomics" of her position. (Exhibit E, Part A, Paragraph 3).

35. The same certification form indicated that Nelson's condition began on June 4, 2009 and that the duration of her condition was expected to last for "1 or so months." (Exhibit E, Part A, Paragraph 1).

36. On July 10, 2009 Nelson called the company to inform it that she anticipated to return to work on Monday, July 13, 2009.

37. Nelson came to work on July 13, 2009 with a medical release outlining the above noted limitations.

38. On July 13, 2009 Nelson was notified that she was terminated by Jasper effective July 10, 2009.

39. Jasper explained that the June 26, 2009 FMLA medical certification form was incomplete and therefore her request for FMLA was denied and she accrued excessive absences.

40. Jasper never attempted to notify Nelson or her doctor that the June 26, 2009 medical certification was deficient.

41. Additionally, on July 10, 2009, the date Nelson was terminated, Jasper received an updated medical certification form which cured any deficiencies in the June 26, 2009 form.

42. Jasper's argument that Nelson violated its attendance policy also fails since the same policy indicates that after three (3) absences the employee will be given a written reprimand, then a second written reprimand, and would then qualify for termination due to excessive absences.

43. Nelson was never issued or received any written reprimands by the company due to her absences.

44. Jasper's attempt to apply the absenteeism policy to terminate Nelson is therefore arbitrary and capricious since the same policy's provisions for notice were completely ignored by the company.

45. Nelson believes that the company purposefully disregarded the July 10, 2009 medical certification and its own notice policies regarding absences because it perceived her as disabled and did not want to incur additional medical expenses on her behalf.

## COUNT I
### (Americans with Disabilities Act)

46. Nelson repeats and realleges each and every allegation contained in paragraphs 1 through 45 of this Complaint with the same force and effect as if set forth herein.

47. Jasper is a company which employs more than fifteen (15) employees.

5

48. Nelson has a physical impairment in the form of severe carpal tunnel syndrome and arthritis which developed during her ten (10) years of employment with Jasper in the capacity of an assembly line worker.

49. The requirements of her position- putting together cabinets on an assembly line- worsened her condition.

50. Nelson treated her condition for a number of years and it is not transitory.

51. On June 26, 2009 and July 10, 2009 Nelson's doctor, Lindsey D. Lira, M.D., faxed medical certifications to Jasper notifying it of Nelson's disabling condition and limitations.

52. Jasper regarded Nelson as having an impairment.

53. Jasper may have reasonably accommodated Nelson's disability without significant difficulty or expense.

54. Jasper violated the Americans with Disabilities Act, 42 U.S.C. § 12101 and Indiana Code §22-9-5-7, by terminating Nelson's employment on July 10, 2009.

## COUNT II
### (Discrimination due to Disability)

55. Nelson repeats and realleges each and every allegation contained in paragraphs 1 through 54 of this Complaint with the same force and effect as if set forth herein.

56. Jasper knew that Nelson had a physical limitation.

57. Nelson requested Jasper to accommodate her condition so that she may return to work following her absence under the Family Medical Leave Act.

58. Jasper discriminated against Nelson by failing to accommodate or assist her so that she may continue to perform a job she was otherwise qualified to do.

59. First, Jasper did not make the existing facilities used by its employees readily accessible to and usable by individuals with disabilities.

60. Second, Jasper did not attempt to restructure Nelson's job or offer her a reassignment to a vacant position, or acquire or modify the existing equipment so she may continue to use it, and otherwise failed to provide any accommodations of her condition.

61. Failure to accommodate Nelson resulted in discrimination due to her impairment under the Americans with Disabilities Act, 42 U.S.C. § 12101 and Indiana Code §22-9-5-17.

## COUNT III
### (The Family and Medical Leave Act of 1993)

62. Nelson repeats and realleges each and every allegation contained in paragraphs 1 through 61 of this Complaint with the same force and effect as if set forth herein.

63. Jasper is a company which employed more than fifty (50) employees in twenty (20) or more workweeks in the calendar year preceeding 2009.

64. Jasper continues to be a covered employer under the FMLA.

65. Nelson worked for Jasper from 1998 through 2009.

66. In the twelve (12) calendar months preceeding her request for leave under the FMLA Nelson worked at least 1,250 hours.

67. Nelson was therefore eligible to receive up to twelve (12) weeks of FMLA leave in 2009 to care for her health needs.

68. Jasper was required to maintain Nelson's health benefits coverage during her requested leave period and to restore her to the same or equivalent position upon her return from leave, with no loss of benefits.

69. On June 4, 2009 Nelson informed Jasper that she was going to see a doctor regarding a serious health condition, which was the soonest practicable time she could inform the company regarding this issue.

70. Nelson therefore gave Jasper proper notice of her intent to take time off due to a medical condition.

71. Jasper had a duty to follow up with Nelson to establish whether FMLA leave was appropriate.

72. Nelson's carpal tunnel and arthritis conditions are serious health conditions since they require continuing treatment by a health care provider which includes her inability to work, due to flare ups, for more than three consecutive calendar days and period visits for treatment by a health care provider.

73. Nelson's request for FMLA due to a serious health condition was therefore proper.

74. On June 11, 2009 Jasper provided notice to Nelson that she was eligible for FMLA but still required to submit a medical certification form on or before June 26, 2009.

75. Jasper did not provide the medical certification form to Nelson until approximately June 20, 2009.

76. Jasper was required to allow Nelson at least fifteen (15) days to provide the medical certification.

77. The June 26, 2009 certification provided that Nelson's condition began approximately a year prior to June 10, 2009 and the expected duration is a year.

78. The same certification form also notes that Nelson will need to work on a reduced schedule due to treatment with absences during flare-ups.

79. The form indicates that as of June 26, 2009 Nelson was not able to perform any of her job functions due to her condition.

80. The medical certification form was therefore complete and proper.

81. A second medical certification form received by the doctor's office on July 8 and submitted to Jasper on July 10, 2009 indicates that at that time Nelson was ready to go back to work with a modification of the ergonomics of her position.

82. On July 10, 2009 Nelson gave Jasper notice that she would return to work on the next business day, July 13, 2009.

83. Upon return to work on July 13, 2009 Nelson was notified that she was terminated which was in violation of FMLA's provisions that her request for leave cannot result in loss of any employment benefits.

## COUNT IV
## (IIED)

84. Nelson repeats and realleges each and every allegation contained in paragraphs 1 through 83 of this Complaint with the same force and effect as if set forth herein.

85. Nelson's acts of discrimination were performed with malice and reckless indifference to Nelson's protected civil rights.

86. As a direct and proximate result of said acts, Nelson has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits, and suffered and continues to suffer distress, humiliation, great expense, embarrassment, and damage to her reputation.

## DEMAND FOR A TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Nelson demands a trial by jury in this action on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Sherry Nelson, by counsel, respectfully prays this Court:

(a) Enter a judgment that Nelson's termination violated the Americans with Disabilities Act, 42 U.S.C. § 12101 and Indiana Code §22-9-5-7;

(b) Enter a judgment that Jasper's failure accommodate Nelson's disability violated the Americans with Disabilities Act, 42 U.S.C. § 12101 and Indiana Code §22-9-5-17;

(c) Enter a judgment that Jasper's refusal to grant Nelson her requested FMLA leave violated 29 U.S.C. § 2615 of the Family Medical Leave Act of 1993;

(d) Issue a mandatory injunction pursuant to 29 U.S.C. § 2617(1)(B) directing Jasper to rehire Nelson retroactive to July 10, 2009, to her position or to an equivalent position;

(e) Issue a mandatory injunction pursuant to 29 U.S.C. § 2617(1)(B) directing Jasper to place Nelson on employment leave retroactive to June 4, 2009;

(f) Issue a mandatory injunction pursuant to 29 U.S.C. § 2617(1)(B) directing Jasper to reinstate all of Nelson's employment benefits, including but not limited to her health insurance, retroactive to July 10, 2009;

(g) Enter a judgment pursuant to 29 U.S.C. § 2617(1)(A)(i)(II) against Jasper and in favor of Nelson for the monetary losses Nelson sustained as a direct result of Jasper's violations;

(h) Enter a judgment pursuant to 29 U.S.C. § 2617(a)(3) against Jasper and in favor of Nelson for the reasonable attorneys' fees and costs incurred by Nelson in connection with the instant action;

(i) Enter a judgment against Jasper and in favor of Nelson for a money judgment representing compensatory damages, including lost wages, past and future wages, all

other sums of money, including any and all benefits and any other employment benefits together with interest on said amounts, in addition to tort damages;

(j) Enter a money judgment representing punitive damages for Jasper's willful violations of law;

(k) Enter a money judgment representing prejudgment interest, in applicable;

(l) Award Nelson such further and additional relief as the Court may deem just and proper.

Date: <u>April 29, 2009</u>   Respectfully submitted,

_____
Diamond Z. Hirschauer
The Law Offices of Diamond Z. Hirschauer PC
141 E. Washington St. Ste. 225
Indianapolis IN 46204
T: 317-491-1050
F: 317-491-1043
DZHirschauer@dzhlaw.com

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing *Complaint and Prayer for Jury Trial* has been served upon the following this 29th day of April, 2010, via certified mail:

Jasper Seating Company Inc.
c/o Michael Elliott, Registered Agent
884 Giesler Road
Jasper, IN  47546

                                             _/s/ Diamond Z. Hirschauer_
                                             Diamond Z. Hirschauer

The Law Offices of Diamond Z. Hirschauer PC
141 E. Washington St. Ste. 225
Indianapolis IN 46204
T: 317-491-1050
F: 317-491-1043
DZHirschauer@dzhlaw.com

Attorneys for Plaintiff